UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x
                               :

In re: RUTH M. POLLACK,       :

                               :

         Respondent.     :

                               :

-------------------------------------------------------x

**MEMORANDUM and VERDICT**

07-MC-347 (ARR)

ROSS, United States District Court:

This is a criminal contempt proceeding in which an experienced attorney, Ruth M. Pollack, is accused of misconduct during her representation of a plaintiff, former United States Park Police Officer Hope Stuart, in the trial of an employment discrimination case: Stuart v. Sec'y of Dept. of Interior, No. 99-CV-8163 (JFB)(MDG). In that lawsuit, Ms. Stuart – who left the Park Police shortly after discovering that a co-worker, Sergeant David Ragusa, was surreptitiously observing women as they used the office restroom – raised a hostile work environment claim under Title VII. The trial of the Stuart case began before Judge Joseph F. Bianco in this Court on May 21, 2007, but ended abruptly on June 5, 2007, when Judge Bianco granted the defendants' motion to dismiss the case pursuant to Fed. R. Civ. P. 41(b) as a sanction for respondent's repeated misconduct.

On August 15, 2007, Judge Bianco commenced this proceeding by filing an order directing respondent to show cause why she should not be held in contempt for misconduct which allegedly occurred during the trial. In that order, Judge Bianco identified four categories or instances of allegedly contumacious behavior:

> (1) Ms. Pollack's failure to appear for trial on time on May 22, 23, 24 and 31, and June 4, [2007], as directed by the Court, as well as the failure to appear for trial at all on May 30, [2007] (and the accompanying refusal to provide documentation regarding her absence, as directed by the Court);

(2) Ms. Pollack's violation of [the] Court's specific order on June 1 [, 2007,] not to ask certain questions of a witness, John Gangemi, regarding pornographic materials obtained from his locker, with Ms. Pollack advising the Court that she did not consider the order to be a "lawful" order;

(3) Ms. Pollack's failure to abide by [the] Court's order to end the direct examination of a witness, John Piccolo, on June 4 [, 2007], and subsequent reargument of the Court's ruling in front of the jury in violation of the Court's specific direction barring such reargument within the jury's presence; and

(4) Ms. Pollack's assertion that the Court made an "illegal" ruling that she need not follow when it precluded her from questioning witnesses regarding plaintiff's purported "whistleblower" claim on June 5 [, 2007], and her continued violation of that ruling on that day.

Order dated Aug. 15, 2007, at 2-3 (internal footnote omitted; bracketed material added).

By letter dated September 21, 2007, the government proposed that the Court agree to limit respondent's sentence to six months' imprisonment and a $5,000 fine, thereby obviating the need for a jury trial. See Letter to Hon. Leonard D. Wexler from AUSA Evan C. Williams, dated Sept. 21, 2007, at 3 (citing Taylor v. Hayes, 418 U.S. 488, 496 (1974)). This Court adopted that proposal and on September 15, 2008, conducted a bench trial with respect to these allegations of contempt. The prosecution relied primarily on the transcript of the trial in Stuart, the accuracy of which was not contested. Based on a careful reading of that transcript, this Court makes the findings of fact set forth below, and concludes that Judge Bianco's allegations of criminal contempt have been proved beyond a reasonable doubt.

### FINDINGS OF FACT

#### Respondent's Lateness and Unexcused Absence

Before turning to the specific instances of lateness identified in Judge Bianco's August 15, 2007, order, this Court notes that May 22, 2007, was not the first time that respondent was

2

late in appearing for the <u>Stuart</u> trial. By order dated March 28, 2007, and modified on March 29, 2007, Judge Bianco ordered that trial in the <u>Stuart</u> action commence on May 15, 2007, at 9:30 a.m. However, respondent did not appear until 10:05 a.m. on that date. When Judge Bianco demanded a "good explanation" for her lateness, respondent stated that she had been involved in an arbitration that lasted late into the previous night, that she was "completely exhausted," and had never agreed to proceed to trial on May 15 (2-3).[1] In light of respondent's refusal to proceed to trial, Judge Bianco did not demand any further explanation for her lateness. Since respondent was not prepared to proceed to trial and because her client, Ms. Stuart, was not present in court, Judge Bianco reluctantly agreed to postpone the start of trial to May 21, 2007.

On the afternoon of May 21, Judge Bianco adjourned the proceedings by telling the lawyer, "I'll see you all tomorrow morning at 9:30" (73) However, the next morning, respondent telephoned the court to say that she would be late, then did not appear until approximately 10:25 a.m. (75). When Judge Bianco demanded an explanation, respondent stated that she had just learned of the existence of allegedly relevant documents belonging to one of Ms. Stuart's former colleagues – former Park Police Officer Michael Fellner – and that she had been "on the phone," attempting to obtain the documents (75-77). Although Judge Bianco found respondent's explanation unacceptable and that respondent – as an experienced attorney – should have known better, he nonetheless proceeded to explain what respondent should have done:

> [T]he appropriate way to handle this type of situation is to come to Court at 9:30, like everybody else, and advise me that you have a problem because of what you believe is a failure to turn over records .

(78).

---

[1]Numbers in parentheses refer to pages in the trial transcript.

The next morning, however, respondent was not present in court at 9:30 a.m., and did not arrive until shortly after 10:00 a.m. When questioned by Judge Bianco, respondent admitted that she had not been in the building at 9:30, but refused to say when she had arrived and accused the Court of attempting to "set [her] up" (297-98). Respondent subsequently implied that her lateness was due to physical problems related to her cancer, saying that she had to adjust a strap on her leg prior to trial (298-99) and she was "always running to the bathroom" (412).

Although Judge Bianco was convinced that respondent had been late and that her conduct was sanctionable, he expressly declined to impose sanctions (409). Rather, the judge further clarified the procedures that respondent was to following, saying:

> [J]ust so we are clear going forward, if you are directed to be here at a certain time, you have to report in to my deputy that you are here. If you have to use the restroom, which you are obviously allowed to use the restroom, but that is the procedure you are to follow going forward.

(412).

The next day – May 24, 2007 – respondent checked in with Judge Bianco's deputy, as previously ordered. However, she then left to use the restroom and did not return to court until 9:50 a.m. Judge Bianco recognized that respondent had complied with the directive he had issued the previous day, acknowledging that respondent "did check in at 9:30" and that he had said she could use the restroom if necessary (554). Nonetheless, he urged respondent to arrive early enough to visit the restroom prior to 9:30, saying, "I don't want you reporting in every day at 9:30, and then we start at 10 o'clock" (554).

Respondent was not late for trial again until Wednesday, May 30, 2007, when she failed to appear at all.[2] Respondent telephoned Judge Bianco's deputy at around 9:15 that morning and

---

[2]Because of the Memorial Day holiday, no proceedings were held on Friday, May 25, or Monday, May 28, 2007. Respondent was apparently on time on Tuesday, May 29, 2007.

stated that she had a medical emergency and was going to the doctor. When Judge Bianco returned her call in open court and inquired about her condition, respondent explained that she had lymphedema in her right leg and that it was painful for her to walk or stand (1009). Respondent further explained that her doctor had agreed to squeeze respondent into her schedule, and that respondent expected to arrive at the doctor's office around 11:00 a.m. (1009). Respondent agreed to call sometime thereafter to update Judge Bianco on her medical condition.

Following the doctor's visit, Judge Bianco and respondent spoke on the telephone for a second time. Respondent reported that the doctor had instructed her to stay off her feet for the remainder of the day (1016). Judge Bianco promptly agreed to adjourn the case to 9:30 the following morning, but directed respondent to provide medical documentation by fax later that day (1017). Respondent agreed to request that documentation (1017).

Respondent did appear for trial the following day, but not until approximately 9:43 a.m. (1024). Respondent readily admitted that she had not checked in with the deputy at 9:30, claiming that she had visited the restroom prior to entering the courtroom (1024). However, respondent argued that her actions had actually saved the court time, saying:

> It would have taken me another five minutes to go back to the bathroom. I didn't have that time, so I went straight to the bathroom.

(1024).

Judge Bianco was not impressed by this argument. He noted that the same thing had happened the previous week and alluded to his May 23, 2007, order, stating:

> This time, you're not only not ready to go at 9:30, but you failed to report at 9:30, as you were instructed. I view this as inexcusable.

(1025).

5

Judge Bianco then asked respondent why he had not yet received the medical documentation he had requested the previous day (1025). Respondent claimed that her doctor was too busy to provide the documentation so quickly (1026). However, later in the day, respondent characterized Judge Bianco's demands for a doctor's note as "insulting" and a "violation of [her rights under] HIPA" (1304-05).[3] The medical documentation was never provided.

Respondent was on time on Friday, June 1, 2007. She also arrived in court sometime around 9:30 a.m. on Monday, June 4, 2007, but then left the courtroom and did not return until 10:15 a.m. When asked to explain her absence, respondent stated that she had arrived in the courtroom to find Judge Bianco engaged in another proceeding, and had left the courtroom in order to visit the restroom and file a lawsuit (1524). Respondent further explained that her lawsuit was against Judge Bianco and defendants' counsel, and related to their conduct during the Stuart trial (1524). Respondent then applied to stay the trial in light of her newly filed action (1525), but that application was summarily denied by Judge Bianco (1527).

*Respondent's Disregard of Other Orders*

Respondent's dissatisfaction with Judge Bianco's rulings expressed itself in ways other than the lawsuit she filed on June 4, 2007. In his August 15, 2007, order, Judge Bianco specifies three additional instances of misconduct, alleging that respondent (1) violated his June 1, 2007, order not to ask a witness, John Gangemi, questions regarding pornographic materials he found in his locker; (2) failed to obey his June 4, 2007, order to end the cross-examination of another witness, John Piccolo, and then reargued that ruling in front to the jury; and (3) asserted that

---

[3]Presumably, respondent was referring to the Health Insurance Portability and Privacy Act of 1996 ("HIPAA"), which contains provisions protecting patient privacy.

Judge Bianco made an "illegal" ruling that she need not follow when he precluded her from questioning witnesses regarding Stuart's purported "whistleblower" claim on June 5, 2007.

### Respondent's Questioning of John Gangemi

The first order which respondent is alleged to have violated occurred during the June 1, 2007, testimony of former Park Police Officer John Gangemi, who had observed Sgt. Ragusa engaging in voyeurism on January 13, 1998, and had alerted his colleague, Ms. Stuart, about Ragusa's activities. On direct examination, respondent sought to introduce evidence that Gangemi had found two pornographic magazines in his locker on February 11, 1998, the day after he was interviewed by Internal Affairs concerning Ragusa's activities and shortly before Stuart left the office. Respondent argued that these magazines had been placed in Gangemi's locker in retaliation for his disclosure of Ragusa's conduct. However, Judge Bianco ruled that evidence inadmissible under Federal Rule of Evidence 403, reasoning that the evidence of the February 11 incident had little or no probative value, which was "overwhelmingly outweighed . . . by the danger of confusion of issues by the jury and unfair prejudice especially in a case where we have had lots of testimony as well as photographs of pornographic materials during the time frame that Ms. Stuart was working in the facility" (1388). Judge Bianco left absolutely no doubt concerning his ruling, giving a lengthy explanation of his reasoning and stating:

> My ruling is there will be no questions regarding the locker room, the locker incident, the incident on February 11 regarding the two magazines in his locker, which he observed in his locker, I'm precluding that and precluding any subsequent incidents beyond that date under 403.

(1391). It is also beyond doubt that respondent understood his ruling, for she protested the ruling at length, referring to it as illegal and opining that there was "no law that support[ed] the

exclusion of this evidence" (1391-92). Indeed, respondent protested so vigorously and at such

length that Judge Bianco reiterated his ruling:

> THE COURT: I want to make sure that you understand that I do not want any questions regarding any activities that took place from the time frame I indicated.
>
> MS. POLLACK: What time frame?
>
> THE COURT: No questions about the two magazines in his locker, no questions related to any activities that took place after the time frame your client left [the workplace].
>
> MS. POLLACK: So anything after my client left is not permitted, that's what I understand your ruling to say.
>
> THE COURT: As well as the February 11.

(1397). Respondent then further protested the exclusion of the evidence of the February 11

incident until Judge Bianco cut her off, saying, "You understand my ruling. My ruling stands.

Let's bring the jury in" (1399).

As soon as respondent resumed her direct examination of Gangemi, she adduced evidence

concerning the February 11 incident:

> Q: Now, you were interviewed, according to the materials I have, by internal affairs on February 10 of 1998. Does that refresh your recollection as to when you were interviewed?
>
> A: Yes.
>
> Q: Now, the day after you were interviewed by internal affairs, Rolla and Harasek, I believe you testified that you discovered pornographic material in your locker, isn't that a fact?

8

(1399). After an objection to this question was sustained by the Court, respondent persisted with this line of questioning, asking, "That was on February 11; isn't that right?" (1400).

Judge Bianco immediately excused the jury, whereupon the following colloquy took place:

| | |
|---|---|
| THE COURT: | You did that in direct violation of my instruction to you no less than 30 second ago; isn't that right? |
| MS. POLLACK: | I didn't violate any order, any lawful order. |
| THE COURT: | Not a lawful order? So you view my order not to go into that as unlawful and, therefore, violated it, is that what you're telling me? |
| MS. POLLACK: | No. |
| THE COURT: | Did you not hear me, 30 seconds ago, tell you that you could not question him regarding the February 11 incident? Did you not hear me say that to you, Ms. Pollack? Are you going to answer that question? |
| MS. POLLACK: | There's nothing for me to answer. |
| THE COURT: | I find your conduct contemptuous. Contempt has just taken place in this courtroom. |
| MS. POLLACK: | Your Honor, I'm trying to follow the rules of evidence. |

(1400-01).

### *Respondent's Questioning of John Piccolo*

The second order which respondent is alleged to have violated occurred during the June 4, 2007, testimony of former Park Police Officer John Piccolo. Sometime in the Fall of 1997,

9

Piccolo had observed Sgt. Ragusa on the top shelf of a closet with his head and upper body above the ceiling tiles (1562-63). Ragusa told Piccolo that he was repairing wires in the ceiling, and Piccolo, aware that Ragusa was the communication supervisor, credited that explanation (1562-63; 1580).

During re-direct examination, respondent repeatedly asked questions designed to elicit hearsay concerning Ragusa's voyeurism and its effect on co-workers. For example, respondent asked Piccolo if he had any "information about how the women were affected by learning that Ragusa had been spying on them for a period of time" (1608), and what rumors he had heard about Ragusa (1609). Judge Bianco sustained objections to these questions (1608, 1609). Respondent then asked the witness, "[D]id you come to learn that [O]fficer Gangemi suffered reprisal because he reported it?" (1610). After defendants' counsel objected, Judge Bianco not only sustained the objection but ended the re-direct examination, saying, "The questioning of this witness is done" (1610).

Respondent immediately protested Judge Bianco's ruling, stating:

> This would be the environment, atmosphere. That is directly
> related to what happened to my client and what she suffered in this
> case. And those people who discriminated against women is
> material, pertinent, and relevant to this case, your Honor. I cannot
> under the case law understand why you will not permit me to elicit
> testimony . . . [t]hat relates to discrimination.

(1610). Mindful of the presence of the jury, Judge Bianco then told respondent, "you need to stop speaking" (1611). However, respondent continued to argue, saying, "Judge, I have an important, this is an extremely and very important – " before Judge Bianco cut her off by instructing the jurors to return to the jury room (1611).

After the jury retired, Judge Bianco accused respondent of violating his June 1, 2007, order limiting the testimony concerning Gangemi. The Court stated:

> Ms. Pollack, you have again violated a direct order of this court
> regarding not going into Gangemi's case and the retaliation you
> allege he suffered. This was the subject . . . of extensive discussion
> and rulings by this court last week, including an effort by you to
> place that information before the jury after I had ordered that you
> should not ask a particular question, and you asked that question
> directly to the jury a minute after my ruling, after the court's ruling,
> and you have done so again.

(1611). Respondent did not deny that she had been attempting to introduce evidence of the alleged retaliation against Gangemi. Rather, she attempted to renew the legal argument that she had made on June 1, 2007, saying, "Under what rule is it improper in this testimony of a hostile work environment under the case law, your Honor?" (1612).

### *Respondent's Insistence on Pursuing a "Whistleblower" Claim*

The third instance of misconduct occurred at the very start of the proceedings on June 5, 1997 – the day on which Judge Bianco ultimately granted the defendants' motion to dismiss the action pursuant to Fed. R. Civ. P. 41(b). Prior to June 5, Judge Bianco had repeatedly advised respondent that the sole claim at issue in the case was a hostile work environment claim. Respondent, however, believed that the case also involved "whistleblower" claims, alleging that the defendants had retaliated against Stuart for exposing Ragusa's misconduct.

On the morning of June 5, 2007, respondent attempted to reopen this issue, claiming that she wanted everyone to be "on the same page as far as . . . where we are going with this case and what the issues truly are" (1726). After several minutes of colloquy, in which respondent fruitlessly attempted to question the judge about whether the evidence supported a "claim for reporting official misconduct," Judge Bianco reiterated his prior rulings:

11

> I have spoken about this previously. I have told you previously, on countless occasions, that this case is not a retaliation case. If you want to bring a retaliation case, you need to bring a separate lawsuit to the extent you are trying to inquire as to whether or not you are alleging that your client made a complaint and there was misconduct related to that complaint.

(1730). However, when Judge Bianco expressly ordered respondent not to raise the "whistleblower" or retaliation issues before the jury, respondent flatly refused, saying, "I can't follow an illegal order, judge. Judge, it is . . . obvious that my client is a whistle-blower" (1732-33). The following colloquy then took place:

| | |
|---|---|
| THE COURT: | My order, whether you believe it is legal or not, you are an officer of the court and – |
| MS. POLLACK: | So are you, your Honor. |
| THE COURT: | And you are to follow the court's instructions. |
| MS. POLLACK: | Not if it is illegal. That would be something that would be against, I would actually be treated as a whistle-blower myself and you would be retaliating against me. I'm a whistle-blower as well, your Honor. And your Honor cannot order me to do something that is illegal. And you are instructing me to do that, your Honor. I can't do that. |
| THE COURT: | You heard my order. |
| MS. POLLACK: | I can't obey it. It is an unlawful order. |
| THE COURT: | You are going to violate that order and speak before the jury on those issues? Is that what you are telling me? |
| MS POLLACK: | I can't answer the question because you will not assist me in defining the issue of |

12

whether or not we have a person who is
reporting official misconduct.

(1733).

Although Judge Bianco stated that he would "have no choice but to dismiss this case with

prejudice" if respondent refused to obey his lawful orders (1735), the trial continued throughout

the morning. Just before the lunch break, however, Judge Bianco warned that respondent's

behavior was "affect[ing] the integrity of this process . . . and the public's confidence in the

integrity of this process" (1854). Respondent did not disagree with this statement. Rather, she

admitted that she had been attempting to violate the instructions the judge had spelled out that

very morning, saying:

> I have repeatedly tried to get in front of the jury that this woman is
> a whistle-blower because she reported federal misconduct and
> suffered retaliation as a result, and she suffered discrimination as a
> female. This court has repeatedly obstructed me and acted as an
> arm of the United States Government, which sits here in silence
> because the court is basically arguing its case for it.

(1857).

Judge Bianco granted the defendants' motion to dismiss the action as a sanction under

Federal Rule of Civil Procedure 41(b) at the start of the afternoon session.

## DISCUSSION

Title 18, section 401 of the United States Code establishes three broad categories of

misconduct punishable as criminal contempt:

(1)   Misbehavior in the court's presence or so near thereto as to
      obstruct the administration of justice;

(2)   Misbehavior of any of its officers in their official
      transactions; [and]

(3)   Disobedience or resistance to its lawful writ, process, order,
      rule, decree or command.

13

Of the four categories or instances of allegedly contumacious behavior identified in Judge

Bianco's August 15, 2007, order, the first two involved disobedience or resistance to a lawful

order, while the latter two involved misbehavior obstructing the administration of justice. Since

the elements relating to these two categories of contempt are different, this Court will address

them separately.

### *Disobedience of a Lawful Order*

To hold an attorney in criminal contempt under the first category, the government must

prove beyond a reasonable doubt the following four elements:

> (1) the court entered a reasonably specific order;
> (2) defendant knew of that order;
> (3) defendant violated that order; and
> (4) the violation was wilful.

United States v. Cutler, 58 F.3d 825, 834 (2d Cir. 1995). With respect to the first two elements,

the Second Circuit has repeatedly held that "[a] defendant cannot be held in contempt absent a

'definite and specific' order of which he had notice. Id. (quoting United States v. Charmer

Indus., Inc., 722 F.2d 1073, 1079 (2d Cir. 1983)). The clarity of the order "must be evaluated by

a reasonableness standard, considering both the context in which it was entered and the audience

to which it was addressed." Id. at 835 (citing United States v. Turner, 812 F.2d 1552, 1565 (11th

Cir. 1987)). Courts can expect attorneys to comply with less specific orders than laymen, and an

attorney obviously has notice of order when he or she is present when the court issues the order.

Id. at 834.

With respect to the fourth element, contempt "requires a specific intent to consciously

disregard an order of the court." United States v. Berardelli, 565 F.2d 24, 30 (2d Cir. 1977). In

the case of attorneys, wilfulness may be inferred from "reckless disregard for [the attorney's] professional duty." Rojas v. US, 55 F.3d 61, 63 (2d Cir. 1995).

Although 18 U.S.C. § 401(3) proscribes only violations of "lawful" orders, it is well established that even "an order that is set aside on appeal may give rise to a charge of criminal contempt." In re Criminal Contempt Proceedings against Crawford, 329 F.3d 131, 138 (2d Cir. 2003) (citing US v. United Mine Workers, 330 U.S. 258, 294-95 (1947)). Therefore, the fact that an order might have been subject to reversal is not a defense to a criminal contempt charge. Id. (citing Maness v. Meyers, 419 U.S. 449, 458-59 (1975). Similarly, the "Collateral Bar Doctrine" bars a defendant from challenging the validity of an order by violating it. Cutler, 58 F.3d at 832. Instead, the defendant must (1) move to vacate or modify the order in district court or (2) appeal to Second Circuit. Id.

*Respondent's Lateness and Refusal to Provide Documentation*

Turning to the first category of contempt charged Judge Bianco's August 15, 2007, order, this Court finds that the evidence establishes beyond a reasonable doubt that respondent wilfully disobeyed Judge Bianco's orders by appearing late for trial on three separate occasions: May 22 and 31, 2007, and June 4, 2007. Indeed, respondent was also late on May 15, 2007, although Judge Bianco elected not to charge respondent in connection with this particular incident.

Respondent's lateness on May 15, 2007, is relevant to the first charged lateness because it establishes beyond a reasonable doubt that respondent was aware that Judge Bianco intended to begin trial proceedings promptly at 9:30 each morning. In fact, Judge Bianco concluded proceedings on the afternoon of May 21 by telling the lawyers, "I'll see you tomorrow morning at 9:30" (73). However, the next morning, respondent did not appear until approximately 10:25

a.m. (74). When questioned by Judge Bianco, respondent did not feign ignorance of Judge Bianco's order, but candidly admitted that she was late because she had been attempting to locate certain documents (75-77). Accusing defendants' counsel of obstructing justice by failing to turn over these documents during discovery, respondent implied that she had an acceptable reason for violating Judge Bianco's order. As Judge Bianco correctly noted, however, no experienced trial counsel could reasonably believe that this was an acceptable reason for disobeying the court's order to be present for the start of trial at 9:30 a.m.

Respondent was also not present in court at 9:30 the following morning. Although she flatly refused to tell Judge Bianco precisely when she had arrived in court – accusing him of trying to "set [her] up" (298) – she admitted that she had not been in court on time (297). The record does not establish beyond a reasonable doubt, however, that her lateness was willful. Respondent implied that she had been delayed by circumstances beyond her control, noting that she had a history of cancer and suggesting that her lateness was due to a pressing need to use the bathroom or to adjust a strap. Judge Bianco himself may have been unsure of whether respondent's lateness was willful; he declined to impose sanctions even though he was convinced that respondent had been late (409). Accordingly, this Court cannot find that respondent's May 23, 2007, lateness was contumacious.

In contrast, the record establishes beyond a reasonable doubt that respondent committed criminal contempt when she was late for court on May 31, 2007, and June 4, 2007. When respondent was late on May 23, 2007, Judge Bianco established procedures which respondent was to follow upon arriving at court, saying:

> [J]ust so we are clear going forward, if you are directed to be here
> at a certain time, you have to report in to my deputy that you are
> here. If you have to use the restroom, which you are obviously

16

> allowed to use the restroom, but that is the procedure you are to
> follow.

(412). Respondent was well aware of these procedures. She followed them faithfully on May
24, 2007, checking in with the courtroom deputy at 9:30, then visiting the bathroom. Indeed,
although Judge Bianco's August 15, 2007, order charges that respondent committed contempt by
being late on May 24, 2007, Judge Bianco himself expressly declined to "chastise" respondent
for her lateness that day precisely because she had followed the rules he proscribed.

On May 31, 2007, however, respondent deliberately disobeyed those rules. Respondent
readily admitted that she had not checked in with the deputy at 9:30 that day, stating that she had
visited the restroom prior to entering the courtroom (1024). Respondent did not allege that her
actions were necessitated by any emergency, claiming instead that she was attempting to save the
court time (1024). Accordingly, there is no doubt that respondent knew of the Court's order and
deliberately disobeyed it.

Respondent also violated Judge Bianco's express instructions when she left the
courtroom without permission on June 4, 2007. Following the events of the morning of May 22,
2007, Judge Bianco delineated the procedures which respondent should have followed, saying:

> [T]he appropriate way to handle this type of situation is to come to
> Court at 9:30, like everybody else, and advise me that you have a
> problem because of what you believe is a failure to turn over
> records

(78). However, on June 4, 2007, respondent did not remain in court and explain to Judge Bianco
that she had a pressing need to file certain papers. Rather, she took it upon herself to leave the
courtroom after 9:30 in order to visit the Clerk's Office. Since she willfully absented herself
from the courtroom in blatant disregard of Judge Bianco's order, this Court concludes that
respondent's actions on June 4, 2007, were also contumacious.

17

Finally, the evidence establishes beyond a reasonable doubt that respondent wilfully refused to comply with Judge Bianco's order that she provide medical documentation excusing her absence on March 30, 2007. Judge Bianco repeatedly ordered respondent to provide this documentation (1017, 1025), but respondent deliberately failed to do so, eventually disparaging Judge Bianco's demands as "insulting" (1304). Although respondent also implied that these orders violated her rights under HIPAA (1304-05), she made no efforts to appeal or vacate the order. Therefore, even assuming that Judge Bianco's orders were unlawful and subject to reversal – and they were not – respondent was not entitled to challenging the validity of those order by violating them. See Cutler, 58 F.3d at 832.

### Respondent's Misconduct in Questioning Gangemi

The second charge raised in Judge Bianco's August 15, 2007, order accuses respondent of willfully disobeying his instructions not to question a witness, John Gangemi, about finding pornographic magazines in his locker on February 11, 1998. As should be readily apparent from the Findings of Fact set forth above, that charge has been proved beyond a reasonable doubt.

First, Judge Bianco's order was not just reasonably specific, but explicit and completely clear. After giving a lengthy explanation of his reasoning, the judge stated:

> My ruling is there will be no questions regarding the locker room, the locker incident, the incident on February 11 regarding the two magazines in his locker, which he observed in his locker, I'm precluding that and precluding any subsequent incidents beyond that date under 403.

(1391). When respondent protested the ruling, claiming that it was illegal and opining that there was "no law that support[ed] the exclusion of this evidence" (1391-92), Judge Bianco repeated his ruling (1397). There can be no question that respondent knew of and understood the order,

18

for she asked several questions to clarify its scope, then specifically protested the exclusion of the evidence of the February 11, 1998, incident (1397-98).

As soon as the trial recommenced, however, respondent asked Gangemi questions about the February 11 incident (1399-1400). When Judge Bianco excused the jury and demanded an explanation for her misconduct, respondent denied violating any "lawful" order (1400) and claimed that she was only "follow[ing] the rules of evidence" (1401). Although respondent refused to admit that she had deliberately violated Judge Bianco's order because she viewed it as unlawful, or even to confirm that she had heard his ruling (1400-01), this Court has no doubt that respondent's violation of the order was willful.

As previously noted, respondent's insistence that Judge Bianco's ruling was unlawful does not state a defense to this egregious, contemptuous behavior. First, Judge Bianco had broad discretion under Rule 403 to preclude Gangemi's testimony on this subject. Second, even assuming, _arguendo_, that Judge Bianco's order was subject to reversal, respondent was not entitled to disregard it. _See_ Cutler, 58 F.3d at 832. The fact that an order might have been subject to reversal is not a defense to a criminal contempt charge. _See_ In re Criminal Contempt Proceedings against Crawford, 329 F.3d at 138.

_Misbehavior Obstructing the Administration of Justice_

The remaining instances of misconduct alleged in Judge Bianco's August 15, 2007, order do not involve disobedience to a lawful order, but rather misbehavior obstructing the administration of justice. _See_ 18 U.S.C. § 401(1). In order to find a person guilty of criminal contempt under this theory, the evidence must establish beyond a reasonable doubt the following four elements:

19

1. The defendant's conduct constituted "misbehavior";
2. The defendant's misbehavior obstructed the administration of justice;
3. The defendant's misconduct occurred in the court's presence or so proximate thereto that it caused the administration of justice to be obstructed; and
4. The defendant acted knowingly and wilfully in misbehaving.

Sand, Modern Fed. Jury Instructions, ¶ 20.01 (relating to § 401(1) violations).

With respect to the first element, misbehavior is "conduct which was so inappropriate that it violated standards of proper courtroom decorum, and was inconsistent with the maintenance of orderly, dignified judicial proceedings." Id., Instruction 20-4. In order to prove the second element, the evidence must establish "an actual obstruction of the judicial process." Id., Instruction 20-5. However, "flouting the court's commands in a polite, respectful, and subdued manner may constitute obstructing the administration of justice as much as obviously unseemly conduct." Id. With respect to the fourth element, a defendant need only intend to commit the act that constituted the misbehavior, not know that the act was wrongful or intend to subvert the administration of justice. Id. (Instruction 20-7).

*Respondent's Misbehavior During the Testimony of John Piccolo*

The third charge raised in Judge Bianco's August 15, 2007, order alleges that respondent committed criminal contempt in two respects. First, she allegedly "fail[ed] to abide by [the] Court's order to end the direct examination of a witness, John Piccolo, on June 4 [,2007]." Order dated Aug. 15, 2007, at 2-3. Second, she allegedly "reargu[ed] . . . the Court's ruling in front of the jury in violation of the Court's specific direction barring such reargument within the jury's presence."

20

This Court cannot finds facts to sustain an independent finding of contempt with respect to the first allegation: that respondent failed to end her examination of Piccolo. Indeed, respondent did not ask another question of Piccolo after Judge Bianco ended the examination by stating, "The questioning of this witness is done" (1610). However, the evidence does establish beyond a reasonable doubt that respondent reargued the ruling in front of the jury, claiming that Piccolo's testimony was "directly related to what happened to [respondent's] client and what she suffered in this case" (1610). In the course of reargument, respondent disparaged the Court, stating that the evidence Judge Bianco was excluding was " extremely and very important" (1611) and that she could not "under the case law understand why [the court would] not permit [her] to elicit testimony . . . [t]hat relates to discrimination" (1610).

This Court finds that respondent's argument in front of the jury constituted "misbehavior," in that it violated standards of proper courtroom decorum. Moreover, this misbehavior, which was designed to evoke sympathy for the plaintiff and to communicate respondent's belief that the Court was treating plaintiff unfairly, obstructed the administration of justice. Finally, there is no doubt that respondent, an experienced attorney, knew what she was doing and that it was entirely improper. Accordingly, this Court finds that the third charge has been proved beyond a reasonable doubt.

*Respondent's Insistence on Raising the Whistle-blower Claim*

The fourth and final charge raised in Judge Bianco's August 15, 2007, order alleges that respondent committed criminal contempt by stating that the Court's ruling precluding respondent from raising a "whistleblower" claim was illegal and that she did not intend to follow it. This Court has no doubt that respondent engaged in this egregious misconduct and that it constituted a violation of 18 U.S.C. § 401(1).

21

First, the trial transcript establishes beyond a reasonable doubt that respondent engaged in this conduct. Respondent made no attempt to conceal her contempt. When Judge Bianco expressly ordered respondent not to raise the "whistleblower" or retaliation issues before the jury, respondent flatly refused, saying, "I can't follow an illegal order" (1732). After Judge Bianco admonished respondent to "follow the court's instructions," respondent made clear that she would not do so, saying:

> [Y]our Honor cannot order me to do something that is illegal. And you are instructing me to do that, your Honor. I can't do that (1733).

Judge Bianco admonished respondent yet again, saying, "You heard my order" (1733). However, respondent again made clear that she would not "obey it," opining, "It is an unlawful order" (1733).

This conduct clearly constituted misbehavior under 18 U.S.C. § 401(1), in that it was entirely "inconsistent with the maintenance of orderly, dignified judicial proceedings." See Sand, Modern Fed. Jury Instructions, ¶ 20.01 (Instruction 20-4). Moreover, by flouting the court's commands, respondent unquestionably obstructed the administration of justice. In addition, there can be no doubt that respondent acted knowingly and willfully, repeatedly informing Judge Bianco that she would not follow his order because she viewed it to be "unlawful" (1732-33).

While Judge Bianco was convinced that respondent's misbehavior was an attempt to provoke him into declaring a mistrial, this Court need not and will not speculate as to respondent's motives. It suffices to say that respondent's misbehavior made it impossible to conduct an orderly trial of this case, and eventually forced Judge Bianco to dismiss the action.

22

## *CONCLUSION*

For the reasons set forth above, this Court concludes that each of the four allegations of criminal contempt alleged in Judge Bianco's order dated August 15, 2007, have been proved beyond a reasonable doubt. Respondent is guilty of criminal contempt, and shall be sentenced on September 26, 2008, at 2:00 p.m.[4]

SO ORDERED.

_____
Allyne R. Ross
United States District Judge

Dated: September 19, 2008
      Brooklyn, New York

_____

[4]Because Ms. Pollack has previously refused to cooperate with the United States Pretrial Services Agency, this Court is not ordering the preparation of pre-sentence report. If respondent represents that she is willing to be interviewed by Pretrial Services, this Court is prepared to reconsider this decision to forego such a report.

SERVICE LIST:

**Ruth M. Pollack, Esq.** (by fax and ECF)
P.O.Box 120
Riverhead, NY 11901-0120
Fax: (631) 591-3162


**Monica Elizabeth Ryan** (by fax and ECF)
United States Attorneys Office
271 Cadman Plaza East
Brooklyn, NY 11201-1820
Fax: (718) 254-6481


**Susan Gail Kellman, Esq.** (by fax and ECF)
25 Eighth Avenue
Brooklyn, NY 11217
Fax: 718-783-8226

## CONCLUSION

For the reasons set forth above, this Court concludes that each of the four allegations of criminal contempt alleged in Judge Bianco's order dated August 15, 2007, have been proved beyond a reasonable doubt. Respondent is guilty of criminal contempt, and shall be sentenced on September 26, 2008, at 2:00 p.m.

SO ORDERED.

s/ ARR
_____
Allyne R. Ross
United States District Judge

Dated: September 19, 2008
Brooklyn, New York